Let's see, are we going to hear the appellant? Who's going to come first? We have two trustees. James Jones for the appellant, Charles DeHart. Mr. Jones, you represent whom? I represent the standing Chapter 13 trustee in this case, Charles J. DeHart. Okay. All right. We are the appellants in this case. And Mr. Bedford is with you. He is with me, yes, as amicus counsel for the Chapter 13 trustees for the Region 3 trustees. And on the other side, we have Mr. DiBernardino. Yes, Your Honor. And for the appellee. And then we have an amicus for the consumer bankruptcy attorneys. Okay. Fine. You'll remind us as you go along. I guess we can maybe figure it out. Probably by the angle of our argument, I would think, yes. You ought to be able to. Okay. Go ahead. Good morning, Your Honors. May it please the Court. My name is James Jones, and I represent the standing Chapter 13 trustee in this case, Charles J. DeHart. I would like to reserve three minutes for rebuttal. That's granted. I would agree with Attorney Acklesberg's statement in his brief that says that this is not a close case, to the extent that we were in a situation in which the court in In re Limbrook. You're talking about $9,000 in this case. Talking $9,000, a little less than $100,000 before. Okay. And in this case, I was just going to say $100 million. $100 million. I'm sorry. I'm sorry. A little discount there. You have to put all the zeros in. Yes. $100 million isn't income. $100 million is tax even. Tax, yes. That's the tax that was owed. I think the government would like that. Yes. But this case is still just as important to us, even though the numbers are certainly not the same. Of course. And we understand that. Yes. And I understand that you understand that also. But it is an important case to us as far as how we administer our offices, et cetera. And it's going to make, and if we write an opinion or even if we make one, it's going to make a precedent. Absolutely. It will essentially determine how we deal with these cases in our office. So when a debtor does decide to convert from a Chapter 13 to a Chapter 7, and there is money being held by the trustee which has not come to the normal cycle of distribution, which normally happens about once a month. And the issue before us is where does that money go? Exactly. Does it go back to the debtor or does it go to the creditors? To creditors. That's correct. And that's the – And it won't go to the creditors. It will go to the attorneys, as is made clear by the briefs. Well, if it goes to the debtors, yes. There is an affidavit indicating that it would go to a debtor's attorney. It would go – well, we'd have to – it would go technically to the debtor because this is post-confirmation, but it eventually would get to the attorneys. But that's not important either, I don't believe, because certainly it's important to debtors down the road. Robert, early on at the beginning, could Mr. Michael, when GMAC refused to – was it GMAC? Yeah, refused to accept the money. Could he have petitioned for a change in the plan or a change in the distribution method? Absolutely. I mean, that's generally what we – that's generally what we expect is if they are going to surrender their home, when they start out the case, it's basically a cure-and-maintain type of situation. I'm going to cure the pre-petition arrears, and I'm going to maintain my regular monthly payments during the term of the bankruptcy so that when everything is complete, I'm up to date. I've paid my pre-petition arrearages. I've paid all my post-petition mortgage payments. I have now cured any pre-petition defaults. If I hadn't crashed my car, I would have my order. You'd have everything, country music, backwards song, the whole way, exactly. But there are cases – It's not by Vivaldi, so I don't know. Yes, okay. I'm sorry. I'm sorry, Your Honor. But in many cases, the debtors realize that they really can't maintain the home for one reason or another. It's a multitude of reasons. And so sometimes during cases, the creditor is able to go to the court and get relief from the automatic stay, and essentially removing that claim from the bankruptcy. And they're saying, well, we're not going to go the bankruptcy route anymore. We as creditors are now going to go the state route and proceed with foreclosure. There are many cases, though, even though a debtor has relief lifted, where they may be able to work out something with the creditor and say, you know, well, if we pay you X number of dollars, will you agree to reinstate the stay? And that's what we expected might happen in this case and in many other cases. So we often will hold the money that is being returned as well as money that is being paid into the case. We code it in a certain way in which money keeps accumulating toward that claim to see if, indeed, the debtor is able to work out something with the creditor. In this case, they weren't. We held the money for a creditor, and then at one point they decided, well, we've decided we're not going to go the Chapter 13 route after the plan was confirmed. We are now going to go Chapter 7. Oh, and by the way, we want to take our money with us. We would submit that that is just fundamentally unfair. Why? Because under Section 1327, a confirmed plan binds the debtor and the creditor. This is a completely different situation from Bobroff in which this court determined that the money went to the debtors because there was not a confirmed plan. And Congress specifically adopted Bobroff, right? Congress specifically said the money does not go to the Chapter 7 trustee. Congress very easily could have said the money goes to the debtor. Congress did not say that. In the notes, it does say that Congress sided with Bobroff, which is correct because under 1326, if a case is dismissed or converted pre-confirmation in a Chapter 13, that money goes back to the debtor. In other words, it gives you, as in Bobroff said, an opportunity to try Chapter 13. We're encouraging people to try it. It's as close I can get to as a free sample. In other words, you can try it. If it doesn't work out, you are no worse off than you were before. You get everything back. The question before this court is when, if ever, does a debtor need to make a commitment to its own Chapter 13 plan? Does the money that the trustee hold, is it for the benefit of the debtor? Do we hold this money month after month in order that any time it can go back to the debtor? Or, as in 1326 says, once the plan is confirmed, then the money starts to be distributed to the creditors. I'm sorry. Go ahead. Well, the creditors didn't object to Michael's request that it go to him. Generally not. The unsecured creditors understand, in our case, that it is our obligation to protect their interests. That's specifically under the Bankruptcy Code, that the standing Chapter 13 trustee needs to protect the interests of the creditors. For whatever financial reason they did not join, I could not tell you. We were not contacted by any of the creditors saying, you know, we're not going to participate for one reason or another. But it is our duty as a trustee to protect their interests. And oftentimes they will rely on us in order to do that. You know, Judge Posner's opinion doesn't suggest that it should go to the creditor. It doesn't make clear why. Because the plan so provides. Is that the money? That's why it would. Pay into the trustee during the operation of the confirmed plan should then be distributed by the trustee according to the plan. And once the plan ends, once the Chapter 7 bankruptcy is, it's converted to Chapter 7, then that starts a new period. But does it, I guess why we're here is, does it convert everything that came in during the old period into part of the estate? And, of course, it could not, it's been decided it could not affect money that has been paid out according to the plan. Does it affect money that is held by the trustee and has not yet been paid out? Now, one of the things that concerns me is all this talk about vesting. It vests in here, it vests in there. Do you really need to go that far? Do you say that the money paid in according to the plan must be paid out according to the plan as long as the plan is operative? And if we say that, do we need to get into all this it vested, it didn't vested language? Vesting as far as trust property, I understand that there's difficulty with that concept to say that it vests in a trust. Income that comes in during a bankruptcy, during a Chapter 13 bankruptcy, is estate property. And so to that extent, it becomes subject to the plan, as well as other vesting operations that may occur. It still remains as property of the estate. The difference is in a Chapter 7, it is not property of the estate because it was not in the possession of the debtor at the time the case was filed. And so to that extent, I don't think we need to get into vesting as to whether it vests in the plan. That's one of the things that bothered me was this vesting. The plan is a governing instrument during the Chapter 13 bankruptcy, and what happens should be done in accordance with the plan. That's correct. There is nothing in the Chapter 7 or in the 300 section of the bankruptcy code that says that upon conversion, the court order confirming the plan is voided, that the plan is still there. The trustee still has several obligations thereafter. So while the section within the code may say that the trustee is no longer in control of the case, there are still obligations that the trustee has. That argument also goes to the fact that, well, if we can't distribute anything at all, how do we even distribute it back to the debtor? If the trustee has no authority to distribute any money at all, essentially the debtors argue that we can't even distribute it to them. It just doesn't make any sense. There is no voiding of the plan. The last distribution after the conversion could be to the remaining creditors because a plan has tiers. Certain things get paid first, such as attorney's fees. Then your secured claims, like your home or taxes, they may be paid next. After all of those claims are paid, then the plan provides for the next tier, which in this case would have been unsecured claims. And that's essentially who we're looking at, the people that we are directed to uphold and to protect their rights. And the decision is, does it go then to the creditors, as is binding by 1327. Doesn't the legislative history of 11 U.S.C. Section 348F indicate that Congress would approve of the result reached in this case? Congress, it's interesting the way Congress did it. And as I said before, Congress could have said, the money that's held by the Chapter 13 trustee in a conversion case goes to the debtor. It did not say so. It said the money does not go to the Chapter 7 trustee, thus leaving 1326 for a situation pre-confirmation of Bobroff, where we're saying, give them a try. If it doesn't work, the debtor gets the money back. However. That's what we think should happen, says Congress. That's correct. If it does work. Pre-confirmation. This is a post-confirmation situation in which 1326 says, distribute it to the creditors. And it also says that a confirmed plan is a binding agreement or a binding contract, in essence, between the debtors and the creditors. The debtor has already had his time to try it. He's decided it is fine, it's working for him, he's going to have a confirmed plan. Our position is that he needs to make a commitment to the Chapter 13 at some period. The debtor is saying, we don't need to make a commitment. We can change our minds at any time and get all of our money back, even though we have a binding arrangement with the other creditors. We disagree with that. We think that's fundamentally unfair to the creditors, and you need a balance between debtors and creditors for bankruptcy to work. Thank you. Thank you. Thank you. We'll hear the amicus. We'll hear both on that side, right? Did you reserve time for three minutes? Okay. Good morning. If it pleases the Court, my name is Richard Bedford, and I represent the Chapter 13 trustees located in the Third Circuit, aside from Appellant Charles DeHart. You'll have to speak up clearly because this is going to Judge Pollack. Thank you, Your Honor. The trustees I represent are William Miller and Frederick Riegel of the Houston District of Pennsylvania. Why don't you get to your argument and forget the names? Sure. You have five minutes. Yes, Your Honor. The amici agree with Appellant Charles DeHart in this case. The decision of the District Court is directly contrary to the longstanding practice that has been followed by all nine trustees in this circuit, and the result of affirming the District Court would actually be a drastic change to the longstanding practice of all the bankruptcy courts in this circuit. I'd like to note that about four months ago, in December of 2011, the Judicial Council of the Third Circuit approved a local bankruptcy rule now in place in the Western District of Pennsylvania, which adopted a longstanding practice that had been done by procedure in that court, which reads that in the event of conversion or dismissal following the confirmation of a Chapter 13 plan, then the Chapter 13 trustee shall distribute all funds received prior to the effective date of the conversion or dismissal in accordance with the terms of the confirmed plan. That's Local Rule 3021-1F. Reversal of the District Court would preserve a system which has functioned well, under which the funds dedicated to a confirmed Chapter 13 plan by the debtor actually reach the creditors. Affirmance of the District Court would require the trustee to disregard the purpose for which the funds were voluntarily paid into the confirmed plan. Let me ask you a question. In this case, apparently, Mr. Michael continued to have part of his salary paid in while he was no longer able to live in the house. Is that correct? Your Honors, I am not aware of when Mr. Michael vacated the property. But in most cases, the fact that the money is being paid into the plan is permitting the debtor to, for instance, live in his home, to use his automobile, to have benefits which he would not otherwise have if he were in a Chapter 7. That's correct, Your Honors. And so there's a quid pro quo.  And the automatic stay, of course, takes effect as soon as the case is filed. Many of these cases are filed on the eve of a foreclosure sale. What did you just say? It wasn't clear. I just didn't hear it. I'm sorry. Just say it again. It was muddled. Many of the Chapter 13 plans which involve mortgage foreclosure are filed on the very eve of a sheriff's sale. Sure. And the automatic stay takes effect immediately. Months go by before there's a confirmation of the plan. And as a result, the debtor has already gained a benefit. The creditor has already been required to forbear. There is already an exchange of duties and responsibilities just upon the very filing of the case. A lot of bankruptcy cases are filed because of things like mortgage foreclosure, consumer problems. Some are small business owners who have filed because they either have incurred large tax debts that need to be paid back or they may have debts to customers. And, therefore, what's the bottom line? The bottom line is it's a very large variety of situations in which this case will apply because the emphasis on whether a debtor has tried Chapter 13, tried to pay back creditors, doesn't just result in whether the debtor has the benefit of the automatic stay, but whether tax debts get paid, people who have deposited money with businesses for home improvements that didn't get made get reimbursed. There are just a lot of reasons that people file for Chapter 13, and there are also a lot of reasons why people convert their cases from Chapter 13 to Chapter 7. There's no good faith, bad faith test in the Bankruptcy Code for whether a trustee is to disburse funds under a confirmed plan. The only place that that's actually described in the code is Section 1326A2, which clearly requires the trustee to distribute the funds to the creditors after there has been a confirmed plan. The only place in the Bankruptcy Code that describes the trustee being required to distribute funds back to the debtor is also in Section 1326A2, and that's the instance in which there is no confirmed plan. Thank you. Your red light is on. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court, my name is John DeBernardino. I'm the counsel for the debtor and the appellee, Barry Michael. I'd like to start off, if I may, with commenting on a couple of things said by opposing counsel. First of all, there was a large deal of emphasis placed on the fact that Mr. Michael could have, during what ended up being about three and a half years, that money was being paid into the Chapter 13 plan, and because checks had been returned by the mortgagee, that he could have modified his plan. That's correct, but so could the trustee, and so could the creditors that would benefit from a reversal of the district court decision. Mr. Michael had an attorney, didn't he? Yes. Was it you? Yes, it was me.  I was aware of what was going on, Your Honor. What happened was that, frankly, Mr. Michael moved out of the property because of the foreclosure proceeding. We lost touch with him. He didn't get in contact with my office, so we weren't able to have the conversation about what his options were in light of the mortgagee obtaining relief from the state, and that's why this gap happened, and the funds accumulated to the tune of over $9,100. When did he crash? I'm sorry. Go ahead. When did he crash the car? I don't know an exact time, Your Honor. It was sometime after he had lost the house and had moved out of the property. By the time I found out he got back in touch with me, both had happened. Actually, three things had happened. He didn't have any assets. No, he didn't have any assets that would be subject. He's like the little man in Little Abner with the cloud over his head. He was in quite worse shape, and that kind of actually leads me to a second point. Now I get my question. Go ahead. Absolutely. Not a question, a comment. The rule that we established in this case will apply not just to Mr. Michael's case, but across the board to how Chapter 13 trustees deal with this type of situation. So should we let our sympathy with Mr. Michael overcome our review of how this system works best? I don't think sympathy is necessary to affirm the district court decision. I think if you look at Congress's intent with regard to encouraging the use of Chapter 13 over Chapter 7, and also as stated in this court in Bob Roth, that in the situation where somebody avails himself of Chapter 13, and it's unsuccessful, and then — Mr. Michael was successful for a period of time. I mean, Bob Roth, you never had a confirmed plan. Bob Roth, the debtor, was never even eligible for Chapter 13. The reason why Mr. Michael filed a Chapter 13 was to save his house from foreclosure. He was in arrears when the case was filed. Okay, but Bob Roth is distinguishable because the debtor did not have a confirmed plan, and the debtor was not even eligible for Chapter 13. Well, what I was referring to in the Bob Roth decision, Your Honor, was the part of the decision that talks about Congress's intent of encouraging Chapter 13 versus Chapter 7, and that if a Chapter 13 proves unavailing, and ultimately with Michael it was unavailing because he ultimately lost his house that he was trying to save, and lost the vehicle, the loan to which he was trying to cram down or lower the payments. So ultimately it was unavailing. So what Bob Roth said in part was that in that situation, a creditor, unsecured creditor, shouldn't be put in a better position than they otherwise would have been if the debtor had started off with Chapter 7. Reversing the district court decision would do exactly that. We have three creditors that would ultimately get paid if the district courts, if you reverse the district court. But they will get paid because the payment to them is provided for in the confirmed plan. No, Your Honor. Respectfully, no. Well, no. The plan says if there's anything left over, they'll get it. It may be doubtful, but it goes to them. Well, it says that no payments to unsecured creditors are anticipated. Anticipated. But it will go to them if there are funds available to pay. Yes. Because they are indeed creditors. They are creditors. But interestingly enough, actually, who the three creditors are that would get paid here? One is a pure unsecured creditor. It's a hospital bill. The other two are what I would call undersecured creditors. It's a secondary mortgage that obviously didn't get paid when the home was foreclosed upon and had a share of sale. And the car lender that we were attempting to cram down. So actually it's the unsecured portion of their claims. That's actually who would end up getting paid here. And as was pointed out, I think, by Judge Sloviter earlier. Sloviter. Sloviter, I'm sorry, Your Honor. She does not like to be called Sloviter. I apologize for that. Say it slowly and you will get Sloviter. I apologize. Thank you. It's okay. Go ahead. DeBernardino gets messed up. Yeah, go ahead. Even Roth gets messed up. That's pretty awful. The point that I was trying to make, Your Honor, is that these creditors had ample opportunities during this case to assert their right to getting some funds from the Michael plan while I was at Chapter 13. Michael also got the use of the truck during the Chapter 13, right? So, I mean, he got a benefit. Sure. At the expense of that undersecured creditor. Not at any more expense than what would have happened if he had started off as Chapter 7, and I think that is the point. If he started off as Chapter 7 and he wanted to keep that truck, he still would have had to have made payments, and ultimately if he couldn't make payments, the vehicle would have gone back to the creditor, or if the vehicle's total has happened here, whatever insurance proceeds there were would have gone to the creditor. What you're telling us, I gather, is that all other things being equal, Congress prefers Chapter 13, which is an opportunity to get back on your feet. Yes. There's a strong preference for encouraging the use of Chapter 13. Reversing this decision of the district court essentially penalizes debtors for trying Chapter 13 because all this money, in this case- Well, isn't it- This case is quite unusual, isn't it? It is. Yeah. So, in making our determination today, as I said, we should not be entirely hung up on the particular facts of this case, but should try to look at the situation generally. How does a Chapter 13 trustee operate, and what are we expecting a Chapter 13 trustee to do? Is that not a valid- Sure. But, again, coming back to this case, frankly, if the Chapter 13 trustee were either so concerned about this accumulating money in his account for three and a half years, he could have moved to modify- force the debtor to modify the plan and then get direction as to whom should get the money that's been accumulating. Frankly, the trustee, I think, has taken the position now that the money that is going- that this money is going to go to these, it turns out, three creditors, that it's clear that somehow the trust-  Well, if it were so clear by the plan, by the confirmed plan, I would suggest that he would have done it already. He would have done it even without modifying the plan. He would have just disbursed the money to these creditors. They're the next in line, but apparently he, I think accurately, read the plan to say that no payments to unsecured creditors is anticipated. Your Honor, in terms of the bottom line with this case, there are two potential entities that can get these funds. One is the debtor, the other one are these creditors. The creditors have shown absolutely no interest in trying to get the funds. They had the opportunity to request a modification of the debtor's plan. They had an opportunity to oppose our motion for a turnover of the funds from the Chapter 13 trustee. No one objected to that. Mr. Michael, on the other hand, the Chapter 13 was unavailing to him. He lost a house he tried to save. He lost a vehicle he was trying to keep. If the choice is between those two, one who needs the funds and one who entities that have no interest in the funds, for whatever reason it's not part of the record, we can't speculate, I would suggest that that combined with the lack of statutory authority for a decision in favor of the trustee would cause you to  We still have to consider the role of the Chapter 13 trustee despite the particular facts of this case, do we not? Sure. Sure, I agree with that. Thank you. Thank you, Your Honors. Mr. Acklesberg. Acklesberg. Please the Court, Irv Acklesberg, for the Amicus National Association of Consumer Bankruptcy Attorneys. I'd like to start by just acknowledging that I agree wholeheartedly with Judge Roth in that whatever happens here, we have to kind of look at the system as a whole. And I would suggest that it's really not very mysterious what's supposed to happen. I think the code is actually far more clear than this litigation is suggesting. And it usually is. Well, if you start with, and I realize that, you know, as I made clear in the brief, our position is 348F, the 94 Amendment, really decided this case. The policy dispute, which is understandable, there's the creditor's interest, there's the debtor's interest, but Congress made the decision. It's not up to this Court to rehash something that Congress already resolved. But I want to move to look at other sections of the code and the rules, just so that the Court is clear about what should happen. And, in fact, the bankruptcy judge here, the way she posed the question, what should the trustee have done? And I think that's the question that Judge Roth is posing. And I think the code actually answers that. If you look at a different subsection of 348, and this is 348E, here's what Congress said is supposed to happen. Conversion of a case under Chapter 13 terminates the service of any trustee that is serving in the case before such conversion. And then Bankruptcy Rule 1019 goes further with that principle and says as follows. After qualification or assumption of duties by a Chapter 7 trustee, and that would have happened the moment Mr. Michael filed his election to convert, at that point there's a Chapter 7 trustee appointed. Now, understand that at this point, temporarily, there are effectively two trustees. There's only one set of creditors, one debtor, but there's two trustees due to the circumstance of a conversion. We have the statute which says very specifically that the 13 trustees' duties end. It's over. And then here's what the rule says. After qualification or assumption of duties by the Chapter 7 trustee, any trustee previously acting in the Chapter 13 case shall forthwith, unless otherwise ordered, turn over to the Chapter 7 trustee all records and property of the estate in the possession of the trustee. So that's the answer to the question that Judge France asked. What should happen? What should happen is the trustee should end his administration of the estate and turn funds over. But you talk about property of the estate. Yes. Are the funds paid into the Chapter 13 trustee in accordance to the plan property of the estate? Well, they are up until the way it works, Your Honor, and I know you suggested you didn't want to hear about vesting, but if I could just briefly talk about vesting. I think it might answer Your Honor's question. And that's dealt with by 1327. The appellant is relying on 1327A for the principle that once confirmed, a plan is definitive of the rights, like a contract. And there's no dispute about that. No one's claiming otherwise. But if you read further, it also says, and this is in Sections B and C of 1327, except as otherwise provided in the plan or the confirmation order, the confirmation of a plan vests all property of the estate in the debtor, in the debtor. Confirmation now sends all, because really the idea of 13 is that all of the wages are technically available, but then there's procedures to determine, well, how much of the wages and who's going to get paid. But once all that's resolved in the confirmation, all of the property of the estate, and that would include the wages, except as provided in the plan, becomes the debtor's property again. And then in C, it makes clear that the debtor, that that vesting in the debtor is free and clear of any claim or interest of any creditor, except as provided in the plan. And, again, it just emphasizes that we have a plan here. However. But my question was, isn't the money paid into the trustee according to the plan? Is that part of the bankrupt estate? Well, I think to use the language of 1327, the way, the answer to that question, Your Honor, is that money, according to the plan, was money earmarked for these two secured creditors. And so as long as that plan was going on, in a sense, you can use the term vesting, but in a sense that money was clearly paid voluntarily, even though it was by a wager that was paid for the benefit of those two creditors. To the Chapter 13 trustee who was under an obligation then to pay out those funds in accordance with the plan. Absolutely. There's no dispute about that. And is that money then part of the bankruptcy estate? I don't think so. Isn't it money that's under the control of the trustee with an obligation on his part to pay it out in accordance with the plan? No, Your Honor. Absolutely no. And the reason it's no is you can't have two estates going on. I mean, what you're saying is that one estate who Congress says is terminated, has no further responsibilities other than to file a final report to explain what he's done, that it's essentially over his responsibility. So really what should have happened here, again, the answer to the question was, if it's a state property, clearly it has to be paid over the Chapter 7 debt, Chapter 7 trustee. If it's not a state property, really, then what is it? Then it's the debtor's property. This idea that there's some other, there's something else out there, this third, so-called third option, really, as the courts below have said, it's not based in any statutory basis. And I would refer the court to the plan property. But the plan is essentially over. It's terminated. If the plan is over, then you have to take what was accumulated by the plan before it was over and distribute it in accordance with the plan. You're asking a Chapter 13 trustee whose responsibility has been terminated to administer an estate. That's what you're saying. It's over to him that he got before his responsibilities were terminated. Had he done that before the conversion, we wouldn't have been here. But when the conversion took place, you were saying it is retroactive. I am saying isn't there a responsibility under the plan for the trustee, having been told this is the end, to take what is in his hands and terminate it in accordance with the plan? Your Honor, it's not I'm saying. It's what Congress said. I mean, 348F. Okay. It's what you're saying to me right now. Yes. And, you know, and as to this idea that the creditors have some sort of property interest other than as plain. I'm not saying they have any property interest. I'm saying the trustee has an obligation to take what has been paid into him pursuant to the plan and to pay it out pursuant to the plan. There is not a single provision of the code that would support that. And that's the issue here, Your Honor. I mean, here's what the Ninth Circuit had to say with that argument. And this is the Ninth Circuit in the Plata case. Which case? Plata, P-L-A-T-A, where they're actually what the court is doing is quoting from the Eighth Circuit in the Resendis case, which was one of the two cases that Congress overruled. So basically this is the Ninth Circuit saying we actually think that the dissent had it right. And I would say, in fact, Congress went with the dissent in 1994. But here's what the Ninth Circuit had to say. The monies received by the Chapter 13 trustee from the debtors during the Chapter 13 proceeding became part of the Chapter 13 estate. The debtors' creditors acquired a non-vested interest in these monies by the plan and the order confirming the plan. A Chapter 13 creditor's interests do not vest until the monies are distributed. Because the monies here in question were not distributed, the funds became part of the Chapter 7 estate and remained subject to the debtors' exemptions. The debtors' interests in the monies have not been extinguished. And that is essentially the idea that Congress embraced. And, you know, again, it's really this idea that creditors' rights are defined. It's creditors' and debtors' rights as to property. It's really it's property of the estate or property not of the estate or property exempt. This idea that there's some other category of money that the trustee is doing something with pursuant to what? To what? I mean, that's what I would leave the court with, to what? Because Congress has said very specifically that his duties are terminated. And finally, if it's not, if this case is not governed by the language of 348F, as I believe it is, it's certainly governed by the Bobroff policy, which whether you, you know, and again, as I said in the brief, Judge Posner was right. There's nothing unreasonable of saying who wins here. It's just that, you know, in our judgment, that determination was made in 1994 by the United States Congress. Thank you. Thank you. May it please the Court. Again, I reiterate, the question before this panel essentially is when, if ever, does a debtor need to make a commitment to its own Chapter 13 plan? The attorney for NACDA seems to indicate that 348F makes it very clear as to what Congress's intent was. And as I argued before, the only thing that 348F says is that it does not go to the Chapter 7 trustee. Because under the bankruptcy code, everything that is owned by a Chapter 7 debtor at the time he files basically goes into the estate. In a Chapter 13, that definition includes the same definition under 541, and is expanded to include post-petition income, which in this case was used in order to fuel and to pay into the plan. So under 348F, once this case was converted, it did not include the income that had been committed to the plan, because at the time of the petition, the debtor did not possess that income. It was all future income. Nor could 1327 vested in the debtor. I thought the legislative history of 348F proves exactly what happened here. It says, as I indicated previously, it's very interesting, because Congress could have said the money goes to the debtor. Congress did not say that. Congress said the money does not go to the Chapter 7 trustee, and we like the decision in Bobroff, which pre-confirmation, you get your try. If it doesn't work out, or if in Bobroff's case it couldn't work out, nothing ventured, nothing gained. You get everything back. But Congress never really did say anything about after that, because it already had 1324 that said that once, or 1326, once the case is confirmed, then the money is distributed to the creditors. So it already had in place two different ways to deal with it. The Bobroff situation, if you don't get the confirmation, you decide that's not for you, you get your money back. After confirmation, it goes to the creditors. And that's the position that we take in this case, that because there was a confirmed plan, that the debtor has to make a commitment to his own plan. We, as a trustee, should not hold money for the debtor. We should be holding money for the parties that that debtor is now bound to being the creditors. I would not agree with the fact that we were holding the money solely in order to distribute it back to the debtor. As I explained again previously, we were holding it to see if, indeed, there was something that was able to be worked out with that particular creditor. Those funds would have been available. It would have been a lot easier for the debtor to make a deal. But if not, we go by the tiers. The only one that's left over are the unsecured creditors, and they are the ones who are entitled to these funds. Thank you. Thank you. We'll take the matter under advisement. Thank you. It was well argued. As I said before, we will have the disk sent to Judge Pollack. We will confer then.